## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOST DIVISION

| | | |
|---|---|---|
| AKASH DIXIT, | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **CASE NO: 7:19-CV-194  (WLS)** |
| | : | |
| VINCENT FAIRNOT, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

Before the Court is an Order and Recommendation ("O&R") (ECF No. 140) filed on January 13, 2023, by United States Magistrate Judge Thomas Q. Langstaff, in which Judge Langstaff denied Plaintiff's Motion to Stay (ECF No. 138) all proceedings in this Court so Plaintiff could file a motion requesting the Eleventh Circuit reconsider its dismissal of his appeal for lack of jurisdiction. In addition, Judge Langstaff recommends that this Court grant the Federal Defendants'[1] Motion for Summary Judgment (ECF No. 98) ("Defendants' MSJ"), and further recommends denial of the Plaintiff's Motion for Partial Summary Judgment (ECF No. 113) ("Plaintiff's MSJ").

In response to the O&R, the Plaintiff filed Objections to Order Denying Motion to Stay and Recommendations on My Motion for Summary Judgment and Defendant's Motion for Summary Judgment (ECF No. 142)[2] ("Plaintiff's Objection"). To the extent Plaintiff's Objection presents objections to the Motion to Stay, it is treated as a motion to reconsider and otherwise as an objection to Judge Langstaff's recommendations relating to the motions

---

[1] "Federal Defendants" are: Vincent Fairnot, in his Official Capacity, Immigration and Customs Enforcement ("ICE") Deportation Officer ("DO") at Atlanta Field Office, Alicia Ferra, in her Official Capacity, ICE Supervising Detention Deportation Officer ("SDDO") at Atlanta Field Office, Cesar Cipran, in his Official Capacity, ICE SDDO at Atlanta Field Office, Robin Esperan, in her Official Capacity, ICE Resident SDDO at Irwin County Detention Center ("ICDC"), and Chuck Kelly, in his Official Capacity, ICE Deportation Officer.

[2] Plaintiff's Objection was originally filed on January 27, 2023, and docketed as an Appeal of the Magistrate Judge Decision (ECF No. 142). It was redocketed on January 31, 2023, to correct this error. Thus, Plaintiff's Objection was timely filed within fourteen days of Judge Langstaff's O&R.

for summary judgment. Also before the Court is the Federal Defendants' Response to Plaintiff's Objections to Order and Recommendation (ECF No. 143) ("Defendants' Response") and Plaintiff's Reply to Defendants' Response (ECF No. 144) ("Plaintiff's Reply").

## JURISDICTION

On March 10, 2022, Plaintiff filed notice of an interlocutory appeal (ECF No. 118) to the United States Court of Appeals for the Eleventh Circuit. Plaintiff's appeal relates to this Court's Order (ECF No. 116) ("Order Appealed") denying Plaintiff's motion for sanctions and denying his motion to reinstate a previous motion for default judgment. After providing the parties time to brief whether it had jurisdiction to hear the appeal, the Eleventh Circuit dismissed the appeal. Order of Dismissal, *Dixit v. Fairnot*, No. 22-10823 (11th Cir. Dec. 1, 2022) ECF No. 30-1, 30-2 [hereinafter "Appeal Case"]. Thereafter, on Plaintiff's motion, the Eleventh Circuit allowed Plaintiff until March 5, 2023, to file a motion for reconsideration of dismissal. Order, *Dixit*, No. 22-10823 (11th Cir. Jan. 4, 2023) ECF No. 36. On March 6, 2023, Plaintiff filed a Motion to Reconsider in the Appeal Case.

> The filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control *over those aspects of the case involved in the appeal. Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L.Ed.2d 225 (1982).

*In re Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008).

As noted, the Order Appealed relates to the Court's denial of Plaintiff's motion that the Court "reinstate" Plaintiff's motion for default judgment. It is not a final order and the Eleventh Circuit dismissed the appeal for lack of jurisdiction on December 1, 2022. "The denial of [plaintiff's] motion for default judgment is not an appealable decision." *Massachusetts Cas. Ins. Co. v. Forman*, 469 F.2d 259, 260 (5th Cir. 1972).[3]

The Court finds that it has jurisdiction to resolve the matters pending herein.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## I.   BACKGROUND

On November 18, 2019, Plaintiff filed this civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (ECF No. 1). At that time, Plaintiff, a citizen and resident of India, was a detainee of Immigration and Customs Enforcement ("ICE") in the Irwin County Detention Center ("ICDC") in Ocilla, Georgia. Plaintiff has since been deported to India. On January 13, 2020, Plaintiff filed his recasted Complaint (ECF No. 9).

When Judge Langstaff conducted his preliminary review of the Plaintiff's recasted Complaint under 28 U.S.C. § 1915(e), Judge Langstaff stated "Plaintiff's assertions regarding the condition of his teeth *arguably* suggest that he has a serious medical need. Moreover, when he attempted to get treatment for his teeth, Plaintiff was offered only extraction as an option, but Plaintiff asserts facts *suggesting* that extraction was not actually a reasonable option." Order & Recommendation, ECF No. 13 at 13 (M.D. Ga. Apr. 7, 2020) (emphasis added) [hereinafter "April 7, 2020 O&R"].[4] Judge Langstaff recommended that "Plaintiff be allowed to proceed for further factual development against [Defendants Vincent Fairnot, Alicia Ferra, Cesar Cipran, Robin Esperan, and Chuck Kelly,][5] on his claim for deliberate indifference to his need for dental work." *Id.*

On June 30, 2020, Plaintiff filed an Amended Complaint (ECF No. 23) in which he substantially reiterated his allegations against Defendants Esperan, Cipran, Kelly, Fairnot and Ferra.[6] In Claim 2 of his Amended Complaint, Plaintiff asserts that Defendants "did not allow the fillings of my teeth to be replaced in a timely fashion subjecting me to cruel and unusual punishments." (ECF No. 23 at 10.) Plaintiff asserts that in the early part of 2019, he verbally told Esperan about the problems with his teeth, advised her that he had raised the issue with the medical department, and was told by "[t]hat department that they have consulted the ICE

---

[4] The Court accepted and adopted the April 7, 2020 O&R by Order entered June 11, 2020 (ECF No. 29).

[5] The Court notes that in various documents, Cesar Cipran's name is spelled as Cesar Ciprian and Robin Esperan's name is spelled as Robin Esperon. The Court uses the spellings for both individuals that are listed on the Court's docket.

[6] Plaintiff also attempted to add parties and claims to his recasted Complaint. Once again, all of Plaintiff's claims were dismissed with the exception of his claim against Defendants Esperan, Cipran, Kelly, Fairnot, and Ferra for deliberate indifference to his need for dental work. *See* ECF Nos. 41, 58.

and per ICE they shall only pay for extraction of my teeth. I told her that if ICE can sanction restoration by filling it will save my teeth and relieve me of the tremendous pain and discomfort that I am subjected to regularly." *Id.* According to Plaintiff, Esperan assured him "that she [would] get my filling replaced." Plaintiff asserts that extraction was not an option for him because he is already missing several teeth and the problems were spreading to other teeth. *Id.* at 11. Plaintiff's request for a filling was not approved. *Id.* at 10. Plaintiff asserts that Cipran was also present during this discussion and was thus aware of the problem with Plaintiff's teeth. *Id.* Plaintiff asserts Kelly was apprised of his dental problem through DRW (Detainee Report Worksheet) 2659 dated August 29, 2019. Also according to Plaintiff, Kelly gave him an evasive answer and bounced him back to medical. *Id.* Plaintiff asserts Fairnot and Ferra had knowledge of his dental problems by virtue of their positions as Deportation Officer and Supervisory Deportation Officer, respectively, because they were "informed of the problems through tablet requests and grievances that are escalated to them." *Id.* at 10-11.

After numerous pretrial matters were resolved, on December 20, 2021, the discovery period expired. (ECF Nos. 132, 137.) Dispositive motions were due thirty days after the discovery period expired (or January 19, 2022). (ECF No. 13 at 25). On December 7, 2021, Defendants filed their Motion for Summary Judgment. On February 16, 2022, Plaintiff filed his untimely Partial Motion for Summary Judgment.

As noted above, Judge Langstaff filed the O&R on January 13, 2023, denying Plaintiff's Motion to Stay and recommending the Court grant Defendant's MSJ and deny Plaintiff's MSJ. Objections and responses have been filed to the O&R and it is ripe for review at this time.

## II.  STANDARD OF REVIEW OF MAGISTRATE JUDGE'S ORDERS AND RECOMMENDATIONS BY DISTRICT COURT

Except for certain matters not relevant to this case, "a [district] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court. . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). *See also Brown v. United States*, 748 F.3d 1045, 1055 (11th Cir. 2014) (citing 28 U.S.C. § 636(b)(1)(A)); *Muhammad v. HSBC Bank USA, N.A.*, 399 Fed. App'x. 460, 462 (11th

Cir. 2010) ("Specifically, a district court may delegate non-dispositive pretrial matters to a magistrate judge for a determination, which the district court can reconsider if 'clearly erroneous or contrary to law.' 28 U.S.C. § 636(b)(1)(A)."). "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any arguments which the party inadvertently failed to raise earlier are deemed waived." *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997).

Further with respect to dispositive motions, "a [district] judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court. . . ." 28 U.S.C. § 636(b)(1)(B). A judge of the district court shall make a *de novo* determination of those portions of the recommendation to which an objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If no timely objection is filed, the court considers the recommendation for clear error. "Most circuits agree that in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (alteration adopted) (internal quotation marks omitted) (citation omitted).

To properly object to the Recommendation, Plaintiff is required to provide "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (internal quotation marks omitted) (citation omitted).  "It is critical that the objection be sufficiently specific and not a general objection to the report." *Id.* at 784.  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Shuler v. Okeechobee CI Warden*, 815 F. App'x 457, 458 (11th Cir. 2020) (internal quotations omitted) (citation omitted).

## III.   MOTION TO RECONSIDER DENIAL OF MOTION TO STAY

Plaintiff's Motion to Stay falls into the pretrial, non-dispositive category of matters that Judge Langstaff is authorized to determine under § 636(b)(1)(A). This Court's reconsideration of that motion is under the "clearly erroneous or contrary to law" standard. 28 U.S.C.

§ 636(b)(1)(A). As noted above, the Motion to Stay is a request for this Court to stay all matters currently pending before this Court so Plaintiff can file a motion requesting the Eleventh Circuit reconsider the Circuit's dismissal of Plaintiff's appeal.

On March 10, 2022, Plaintiff filed notice of an interlocutory appeal (ECF No. 113) to the United States Court of Appeals for the Eleventh Circuit, Case No. 22-10823 ("Appeal Case"). Plaintiff's appeal relates to this Court's Order (ECF No. 116) ("Order Appealed") denying Plaintiff's motion for sanctions and denying his motion to reinstate a previous motion for default judgment. After providing the parties time to brief whether it had jurisdiction to hear the appeal, the Eleventh Circuit entered an Order of Dismissal as the mandate of the court. *See* Order of Dismissal, Appeal Case, ECF No. 30-1, 30-2 (11th Cir. Dec. 1, 2022). Thereafter, on Plaintiff's motion, the Eleventh Circuit allowed Plaintiff until March 5, 2023, to file a motion for reconsideration of dismissal. *See* Order, Appeal Case, ECF No. 36 (11th Cir. Jan. 4, 2023). On January 9, 2023, Plaintiff filed his Motion to Stay in this case, which was denied by Judge Langstaff on the basis that Plaintiff has not yet filed a motion for reconsideration in the Eleventh Circuit, but has only sought an extension of time to do so.

After Judge Langstaff denied Plaintiff's Motion to Stay in his O&R entered on January 13, 2023, Plaintiff filed a motion to stay in the Eleventh Circuit requesting the Circuit stay proceedings in this Court pending Plaintiff filing his motion for reconsideration in the Circuit Court. On January 24, 2023, the following entry was made in the docket of the Appeal Case: "No action will be taken on Motion to stay lower court proceedings [38]. The referenced filing from Appellant Doctor Akash Dixit is premature. This case is closed. If the appeal is reopened you may renew your motion at that time. [Entered: 01/24/2023 01:14 PM]."

After the Eleventh Circuit noted that no action would be taken on the motion to stay, Plaintiff filed his objection to the O&R. Therein, Plaintiff objects to Judge Langstaff's denial of the Motion to Stay filed in this case (ECF No. 138) because Judge Langstaff did not provide citations to cases supporting his decision; and, in Plaintiff's opinion, Judge Langstaff's denial of the motion to stay on the basis that Plaintiff's appeal has been closed is illogical.

The Court finds that Judge Langstaff's decision was not clearly erroneous. As reflected below, the Plaintiff did not provide any legal analysis or bases upon which this case should be stayed. While it is true that *pro se* parties are given some leeway in the pleadings and motions

filed in a federal court, *pro se* parties are still required to make their own arguments and provide supporting authority for those arguments. *See Diggs v. Lowe's Home Centers, LLC*, No. 21 C 4544, 2022 WL 3543496, at *3 (N.D. Ill. Aug. 18, 2022) ("[E]ven *pro se* litigants must expect to file a legal argument and some supporting authority because a litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting authority forfeits the point.") (alterations adopted) (internal quotation marks omitted) (citation omitted); *See Butler v. Broward Cnty. Cent. Examining Bd.*, 367 Fed. App'x. 991, 992 (11th Cir. 2010) ("Courts are not allowed to act as de facto counsel or to rewrite a deficient pleading."); *Swain v. Col. Tech. Univ.*, No. CV414-071, 2014 WL 3012693, at *1 (S.D. Ga. June 12, 2014) ("Judges . . . at most can construe liberally what *pro se* litigants say factually, but they cannot develop legal arguments or plug the legal holes in their cases for them.").

> When deciding whether to grant a stay pending appeal, we evaluate four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

*Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *7 (11th Cir. Sept. 21, 2022) (per curiam). Plaintiff cannot meet his burden. First, and most significant is that his appeal has been closed. Insofar as any likelihood of Plaintiff succeeding on the merits *if* the appeal is reopened, this Court has entered multiple orders explaining why he is not entitled to default judgment. *See* Order Appealed, ECF No. 116 (listing orders and explaining again why Plaintiff is not entitled to default judgment). Plaintiff has not demonstrated how he will be harmed if the stay is not granted. He merely reasons that since the Circuit Court granted his motion for extension, the Circuit Court was giving him "time to do research and build up on my arguments. If I am embroiled in this case, I will lose time to do that research. Therefore, the purpose of extension by Court of Appeals will be defeated." Mot. to Stay 2. There is nothing in the Circuit Court's one sentence order granting the extension that supports Plaintiff's speculation as to the Circuit Court's intent. Indeed, as noted, the appeal is closed. The motions for summary judgment before this Court are ripe for review. While Plaintiff has failed to show

how he will be irreparably harmed, his numerous malicious and frivolous filings have hindered the timely resolution of his complaint to the detriment of the Defendants.

Plaintiff asserts that his appeal is in the public interest and dismissal of his appeal "would be manifest injustice to [him]." Mot. to Stay 1. Plaintiff contends that the public interest is served by his allegations "that this Court is compromised in corruption and that judges of this Court are on the rolls of the management of the private prison named Irwin County Detention Center," and that he is "going to expose this Court to the world and the Court of Appeals in my ensuing motion to reconsider." *Id.* at 2. Plaintiff's assertions are false and are totally irrelevant to a reconsideration of his Motion to Stay.[7]

The public interest is best served by this Court completing review of Judge Langstaff's O&R relating to the Defendants' Motion for Summary Judgment (ECF No. 98) and Plaintiff's Partial Motion for Summary Judgment (ECF No. 113) and rendering a final order in this matter at which time Plaintiff can proceed, if he still desires, with his appeal of the entire case rather than the piecemeal appeal he filed and which was dismissed.

Accordingly, this Court finds that Judge Langstaff's Order, included in his O&R (ECF No. 140 at 2), denying Plaintiff's Motion to Stay is not clearly erroneous or contrary to law. Plaintiff's motion for reconsideration is **DENIED**.

## IV.   APPLICABLE LAW

### A.   Motion for Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable

---

[7] *See* Order, ECF No. 145 (Court's order denying Plaintiff's motion to recuse and reviewing Plaintiff's numerous filings) entered February 22, 2023. Plaintiff did not timely appeal this Order.

substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted).

Also relevant in this case, is that Plaintiff's Amended Complaint is verified, and, therefore, "serves as the equivalent of an affidavit for purposes of summary judgment." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citation omitted). *See also United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."). The "affidavit cannot be conclusory" and "must set out facts that would be admissible in evidence." *Id.* at 856-57.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B.    42 U.S.C. § 1983–Deliberate Indifference to Serious Medical Needs

Plaintiff's remaining claim is that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the

infliction of "cruel and unusual punishments." U.S. Const. amend VIII; *McBride v. Rivers*, 170 Fed. App'x 648, 654 (11th Cir. 2006); *see also Robinson v. California*, 370 U.S. 660, 675 (1962) (holding that the Eighth Amendment's ban on cruel and unusual punishments is made applicable to the states by virtue of the Fourteenth Amendment's Due Process Clause).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich,* 340 F.3d 1279, 1282–84 (11th Cir. 2003).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In the Eleventh Circuit, "a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted) (citation omitted). "In certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Id.* at 1243-44. In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).

"Mere negligence in diagnosing or treating a medical condition, or even medical malpractice, does not state an Eighth Amendment claim of medical mistreatment." *Id.* Moreover, "[w]hether prison officials should have employed additional diagnostic techniques or care is an example of medical judgment and not an appropriate basis for § 1983 liability." *Id.* "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not "support a claim of cruel and

unusual punishment," and "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

### C.     Qualified Immunity

Defendants assert they are entitled to the protection of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* There are two parts to the qualified immunity analysis: (1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct. *Id.* at 232.

The Eleventh Circuit has held that:

> To be eligible for qualified immunity, the official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was clearly established at the time he did it.

*Crosby v. Monroe Cnty*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal quotation marks omitted) (citations omitted). Thus, in the Eleventh Circuit, the Court first determines whether the Defendants were engaged in a discretionary function before moving on to determine whether Plaintiff has presented relevant facts that Defendants committed a constitutional violation and that violation was clearly established at the time of Defendant's conduct. "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." *Id* at 1332 (internal quotations marks omitted) (citation omitted).

## V.   ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   Defendants' Motion for Summary Judgment

Defendants contend that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law in their favor. Specifically, Defendants contend that they are entitled to the protection of qualified immunity because Plaintiff cannot establish a constitutional violation based on his allegations that they were deliberately indifferent to his need for dental work.

Defendants supported their motion for summary judgment with Defendants' declarations, a copy of the Intergovernmental Agreement ("IG Agreement") effective July 25, 2007, between the United States Marshals Service and Irwin County, Georgia (the "Local Government"),[8] and copies of Plaintiff's medical records. (ECF Nos. 98-3, 98-4, 102-1.)

According to the Defendant's Declarations (ECF No. 98-3) ("Declarations"), at the times relevant to Plaintiff's allegations:

1.   Esperan was an Acting Supervisory Detention and Deportation Officer for ICE at ICDC between December 2018 and March 2019 and between July 2019 and June 2020. She was responsible for overseeing the ICE officers assigned to ICDC. *Id.* at 1.

2.   Fairnot was a deportation officer at the Atlanta Field Office of ICE between May 2018 and August 2020, where he was a "non-supervisory case officer responsible for monitoring detainee cases throughout the immigration court proceedings and removal process." *Id.* at 3.

3.   Ferra was a Supervisory Detention and Deportation Officer at the Atlanta Field Office between May 2018 and August 2020, and was responsible for monitoring detainee cases. *Id.* at 5.

4.   Kelly was a deportation officer with ICE stationed in Charlotte, NC between May 2018 and August 2020. He was "a non-supervisory case officer responsible for monitoring detainee cases throughout the immigration court proceedings and removal process." *Id.* at 7.

---

[8] There are three (3) Federal Government components involved in the IG Agreement: the United States Marshals Service, the Federal Bureau of Prisons of the Department of Justice, and the United States Immigration and Customs Enforcement of the Department of Homeland Security (DHS). Confusingly, the first page of the IG Agreement, which includes the signatures of the parties to the agreement, shows Irwin County Detention Center as the party defined as "Local Government," with the signature of Sheriff Donnie Youghn on behalf of the Local Government. However, the body of the agreement defines Irwin County, Georgia as the party defined as "Local Government" in the IG Agreement.

5.      Cipran was a Supervisory Detention and Deportation Officer at the Atlanta Field Office between August 2018 and June 2020, visiting the ICDC once a week or every two (2) weeks for facility inspections. *Id.* at 9. Cipran was the contact supervisor over the temporary ICE officers assigned to ICDC who managed clerical functions. *Id.*

All of the Defendants declare that according to the IG Agreement,[9] ICDC "and its employees were responsible for the day-to-day operations of the facility, to include the housing, security, feeding and medical care of the detainees." (*Id.* at 1, 3, 5, 7, 9.) While Cipran declares "[t]here were no ICE officers who were assigned to work detainee detention functions inside the facility" (*Id.* at 9), the other four Defendants declare "[t]here were ICE Officers/ federal employees who were assigned to work or supervise inside the facility."

According to their Declarations, Defendants Esperan, Fairnot, Ferra, and Kelly do not have "medical/dental certificates or authority to approve or deny any type of medical or dental treatment within an ICE or subcontracted facility[;]" nor are they involved in deciding or overseeing the medical treatment that a detainee may or may not receive. ((ECF No. 98-3 at 1, 3, 5, 7.) Esperan, Fairnot, Ferra, and Kelly further stated that, at the request of a detainee at ICDC, they can inquire into the status of a detainee's medical request. Esperan, Fairnot, and Kelly stated that they timely followed up with ICDC on Plaintiff's medical requests. (*Id.* at 1, 3, 7.) Ferra stated that she "was not involved in making any medical requests for the Plaintiff[,]" and that she "communicated with Plaintiff solely through email and the only interactions were through the Detainee Request Work Form ('DRW')." (*Id.* at 5).[10]

Unlike the other Defendants' Declarations, Cipran's Declaration does not indicate (i) whether he has a medical/dental certificate, (ii) whether he had authority to approve or deny any type of medical or dental treatment at the ICDC facility, or (iii) if he was involved in deciding or overseeing the medical treatment that a detainee may or may not receive. Cipran appears to rely on the IG Agreement terms that ICDC and its employees were responsible for the day-to-day operations of the facility, including the medical care of the detainees.

---

[9] All the Defendants incorporated the IG Agreement into their respective Declaration. (ECF No. 98-3 at 1, 3, 5, 7, 9.)

[10] Ferra also stated that she "timely followed up with ICDC on Plaintiff's medical requests." ((ECF No. 98-3 at 5.) It is unclear whether this was a typographical error as it contradicts her specific statement that she "was not involved in making any medical requests for the Plaintiff." (*Id.*)

Under the IG Agreement, the Local Government is responsible for the secure custody, safekeeping, housing, subsistence and care of federal detainees, including their medical care. With respect to the medical care of the detainees, the IG Agreement provides:

> The Local Government is financially responsible for all medical treatment provided to federal detainees within the facility. The Local Government shall provide the full range of medical care required within the facility including dental care, mental health care, pharmaceuticals, and record keeping, *as necessary to meet the essential standards of the National Commission of Correctional Health Care's Standards for Health Services of Jails (current edition).*

> The Local Government will submit to the Federal Government requests for approval of all treatment to be provided outside the facility. The Federal Government shall be responsible for the cost of approved outside medical treatment.

IG Agreement, ECF No. 98-4 at 4 (emphasis added). There is nothing in the record that shows whether tooth extractions are required under the standards of the National Commission of Correctional Health Care's Standards for Health Services of Jails.

As Judge Langstaff noted, although the medical records submitted by Defendants are not authenticated, the Court "may consider unauthenticated documents on a motion for summary judgment if it is apparent that they will be admissible at trial." *The Lamar Co., L.L.C. v. City of Marietta, Ga.*, 538 F. Supp. 2d 1366, 1377 (N.D. Ga. 2008); *see also Woodard v. Clark Atlanta Univ.*, Civil Case No. 1:19-cv-02283-SCJ-RGV, 2021 WL 4861176 (N.D. Ga. Jan. 22, 2021) (R&R recognizing that under current Rule 56, authentication is not required at summary judgment stage), *accepted & adopted by Woodard v. Clark Atlanta Univ.*, 2021 WL 4861445 (N.D. Ga. Mar. 16, 2021).

Plaintiff's medical records reflect that he first complained of a dental problem[11] on August 29, 2018, when he completed a Medical Request & Consent for Treatment Form ("MR Form") and included "dental" as the nature of his medical complaint. (ECF No. 102-1 at 107.) Plaintiff was seen the next day and complained to medical staff that his tooth hurt. (*Id.* at 104.) He was provided with Orajel and advised to avoid hot/cold liquids and to chew on the opposite side of the toothache.

---

[11] Plaintiff's medical records reflect he received medical care for other ailments. However, the Court refers only to the dental care Plaintiff requested and received or did not receive as dental care is the only medical issue relevant to this case.

Plaintiff's Initial Health Evaluation and Assessment was completed on September 9, 2018. The notes from the assessment include under "Dental: "Gums – normal. Teeth – Cavities in upper and lower molars. Possible broken filling in upper left molar." (*Id.* at 95.) The assessment lists as a "significant issue[ ] – Cavities in molars with tooth pain after eating." Plaintiff was given verbal instructions on dental hygiene and advised to return to clinic as needed. *Id.* at 96.

Plaintiff was next seen by medical staff on October 2, 2018, with complaints that his "tooth hurt." The nurse's notes from that date state:

> [Plaintiff] states does not want tooth removed wants cavity filled, [Plaintiff] states has filed a motion with the court to get approval for cavities to be filled. [Plaintiff] then changed story and said he filed a motion for correct medical attention/dental attention. That a tooth should not have to be pulled if it can just be filled. [Plaintiff] changed his story on what he was saying when this nurse informed him that everything was being documented.

(*Id.* at 92.) The October 2, 2018 notes reflect that Plaintiff continued to refuse referral to a dentist to have the tooth pulled and was again instructed to avoid hot/cold liquids and to chew on the opposite side of the toothache. *Id.* Plaintiff submitted three grievances between October 11 and October 28, 2018, requesting follow-up care for his dental complaints. (*Id.* at 87-91.) Plaintiff was seen on October 30, 2018, with complaints of pain in his top left molar. Plaintiff requested a dental visit. However, the notes do not reflect any discussion regarding filling cavities or pulling teeth. Plaintiff was prescribed Ibuprofen. (*Id.* at 84.)

Plaintiff submitted a grievance on October 31, 2018, and two additional grievances on November 1, 2018, requesting information on scheduling of his dental visit which he expected to be scheduled for October 30, 2018. *Id.* at 76-82. The notes reflect that there was a misunderstanding as to the request for referral to a dentist during the October 30, 2018 appointment. Plaintiff was taken to see a dentist on November 6, 2018. *Id.* at 61-69. In a summary of treatment, the dentist stated:

> Periapical pathology evident with #12 and #13. Patient wants to have teeth "filled". Advised him it would require root canals, post/core build ups and full coverage crowns which are not approved services for ICE. Advised him he could have teeth extracted. Patient refused to have teeth removed. Advised him of risk of continued pain, swelling and/or infection. He said he understood[.]

*Id.* at 56. Plaintiff continued to submit medical grievances requesting tooth fillings on April 25 and 29, 2019 (*Id.* at 21-23). He was told each time that ICE does not pay for fillings, but will pay for extraction. He was further advised that if he decided he wanted to have the tooth removed, he should fill out a sick call request form. On May 20, 2019, Plaintiff submitted a medical request complaining that he could not chew hard food due to tooth problem and that his pain level was 8 out of 10 (*Id.* at 18). He was seen by medical staff on May 21, 2019. The medical notes reflect that "[e]ven after being informed ICE does not pay for fillings [Plaintiff] insist that we send for approval for cavities to be filled." *Id.* at 14.

B.    **Plaintiff's Objection to O&R**

In his response to Defendants' MSJ, Plaintiff makes conclusory statements that Defendants' Declarations establish that Defendants acted with deliberate indifference, that Defendants had "full wherewithal to correct the illogical and unlawful course of medical treatment that was being forced upon [Plaintiff] by ICDC[,]" (ECF No. 103 at 6), that Defendants caused a seventeen-month delay in Plaintiff receiving treatment, and that Plaintiff has ample facts which he can use at trial to establish Defendants' liability, including personal records that he possesses. *Id.* The time for Plaintiff to submit his evidence to preclude the granting of Defendants' MSJ was when Plaintiff filed his response to Defendant's MSJ.

In Plaintiff's Objection to O&R, while cluttering his presentation with unnecessary insults, Plaintiff repeats his arguments and misstates Judge Langstaff's findings. Plaintiff states that first he should put into the record that the only option ICE detainees are provided in case of dental ailments is tooth extraction. (ECF No. 142 at 2). This statement is not accurate. Rather, Plaintiff was given the option to have his tooth extracted. He was told filling the tooth was not an option that would be paid for by ICE. Plaintiff chose not to have the tooth extracted, leaving him with the alternatives of using Orajel, Ibuprofen, and/or chewing his food on the opposite side of the painful tooth. Plaintiff has voiced his disagreement with these options numerous times. However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not "support a claim of cruel and unusual punishment." *Harris*, 941 F.2d at 1505.

Plaintiff next contends that Judge Langstaff's acceptance that the Defendants do not have medical or dental knowledge is inconsistent with

16

> [Judge Langstaff's] finding no fault in the Defendants restricting the dental treatment to just extraction. If the Defendants indeed have no knowledge about dental issues, then, on what basis did they restrict my dental treatment to just extraction. If the ICDC staff was spreading a lie, why did the Defendants not correct the misinformation[?]

(ECF No. 142 at 3.) Plaintiff did not provide ANY evidence and Judge Langstaff did not find that Defendants had restricted Plaintiff's treatment option to extraction of the tooth. Rather, Judge Langstaff found that, "Defendants have established that they followed up on Plaintiff's complaints regarding his dental condition and treatment, *and that they did not have the authority to direct or deny medical or dental care.*" (ECF NO. 140 at 9 (emphasis added).) Plaintiff further produced no evidence that "ICDC staff was spreading a lie" or even that anyone had lied about the treatment available to him.

With respect to Plaintiff's allegations of a seventeen-month delay in his dental treatment, Plaintiff states that Judge Langstaff "wants me to prove the commonsensical conclusion that 17 months of detention is going to degrade already damaged teeth (exacerbate my dental degradation)." (ECF No. 142 at 3.) Earlier Plaintiff criticized Judge Langstaff asserting that Judge Langstaff did not provide, at least in Plaintiff's opinion, support for his findings. Now Plaintiff totally ignores the law provided in the O&R that: "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.*" (ECF No. 140 at 3 (quoting *Hill v. DeKalb RYDC*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds, Hope v. Pelzer*, 536 U.S. 730 (2002).) Instead Plaintiff states he provided articles that buttressed his conclusion. Those articles are irrelevant to Plaintiff's specific condition and are not admissible evidence in his case.

Further, it is disingenuous for Plaintiff to assert these Defendants were responsible for a seventeen-month delay in treatment when according to his Amended Complaint, Esperan and Cipran were advised of his dental problems in early 2019 and Kelly was advised of the problem on August 29, 2019. Plaintiff was deported before March 18, 2020. Therefore, these Defendants may have known Plaintiff had dental problems for nine to twelve months.[12]

---

[12] See Plaintiff's Amended Complaint stating Plaintiff advised Esperan of the situation with his teeth in early 2019 during a conversation at which Cipran was present. (ECF No. 23 at 10.) Kelly was apprised of Plaintiff's

More importantly, however, as stated above, Plaintiff did not show that Defendants had any authority to direct his medical care, let alone that Defendants were responsible for a delay, if any, in his dental treatments.

Finally, Plaintiff objects to Judge Langstaff's finding that Defendants were not liable based on Plaintiffs allegations that Defendants were supervisors of ICDC staff. Plaintiff argues that Judge Langstaff wants "to excuse the Defendants because they were supervisors. However, supervisors who are aware of the constitutional violation are liable under the precedent of this circuit." (ECF No. 142 at 3.) Again, Plaintiff provides no support and ignores Judge Langstaff's citation to Eleventh Circuit law that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." (*Id.* at 3 (quoting *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355 (11th Cir. 2022).)

### C.   Judge Langstaff's O&R with respect to Defendants' MSJ is accepted and adopted.

For a specific claim of deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment, Plaintiff must show: (1) evidence of a serious medical need; (2) evidence that prison official acted with an attitude of 'deliberate indifference' to that serious medical need by evidence that prison officials must both know of and then disregard an excessive risk to the prisoner.

The Court agrees with Judge Langstaff's recommendation with respect to Defendants' MSJ. Viewing the evidence in the light most favorable to Plaintiff, the Defendants had knowledge of Plaintiff's dental problems during Plaintiff's detention at ICDC. Plaintiff's facts reflect that Cipran, Esperan, and Kelly were advised of his problems sometime in early 2019 or August 29, 2019. Plaintiff did not provide information on when Fairnot and Ferra had specific knowledge of his dental condition. However, Fairnot and Ferra both acknowledge that they timely followed up on Plaintiff's medical requests. Ferra contends that she only corresponded with Plaintiff through email and the DRW and Plaintiff asserts he met Ferra in person. Plaintiff asserts this is a material fact. However, Plaintiff does not provide any

---

dental problems through the DRW dated August 29, 2019. (*Id.*) The Court received notice of Plaintiff's deportation on March 18, 2020, through Plaintiff filing a notice of change of address. (ECF No. 10.)

information as to what was discussed in any face-to-face meeting with Ferra that is different from the information provided to Ferra through the DRW and emails. While Ferra acknowledges that she was aware of Plaintiff's dental problems, the Court finds that whether Ferra met personally with Plaintiff is immaterial.

Plaintiff's medical records reflect that he received prompt dental care but continually refused to have the tooth extracted and persisted in demanding that the filling be replaced. The November 6, 2018 medical report reflects that the dentist advised Plaintiff that his condition required "root canals, post/core build ups and full coverage crowns which are not approved services for ICE." (ECF No. 102-1 at 56.) This report reflects that replacing the filling would not have solved Plaintiff's dental problems. The dentist advised that Plaintiff could have the tooth removed. Again, Plaintiff refused to allow removal of the tooth even after being advised of the risk of continued pain, swelling and/or infection. *Id.*

As to the seriousness of his dental condition, the Court finds that the medical records support that Plaintiff's need for a root canal is a serious medical condition. However, Defendants have established that Plaintiff's belief that the IG Agreement required ICDC to provide a full range of dental care was erroneous. Instead the IG Agreement provides that "[t]he Local Government shall provide the full range of medical care required within the facility including dental care, . . . *as necessary to meet the essential standards of the National Commission of Correctional Health Care's Standards for Health Services of Jails (current edition).*" (ECF No. 98-4 at 4 (emphasis added).) Plaintiff ignores the qualifying language that such care is that necessary to meet the standards of the stated guidelines. Plaintiff failed to show that the applicable standards required that his filling be replaced at his request—particularly where such treatment would be contrary to the dentist's recommendation that Plaintiff needed a root canals. (*See* ECF No. 102-1 at 56 (report of Dr. Thackson, DMD, MAGD, PC reflecting that Plaintiff was advised that fixing his teeth "would require root canals, post/core build ups and full coverage crowns which are not approved services for ICE.").) If Plaintiff wanted dental services covered by ICE, he had the option of having his teeth removed.

Not only did Plaintiff fail to show that Defendants had authority to direct ICDC staff as to Plaintiff's medical/dental care, but Plaintiff also did not show that Defendants had

authority to require treatment outside the guidelines under which ICDC was operating, or that Plaintiff's preferred treatment was required or even recommended by a dentist.

Upon full review and consideration of the record, the Court finds that Judge Langstaff's Order and Recommendation (ECF No. 140) should be, and hereby is, **ACCEPTED, ADOPTED**, and made the Order of this Court for the reasons stated, findings made, and conclusions reached therein, together with the reasons stated, findings made, and conclusions reached herein. Accordingly, the Defendants' Motion for Summary Judgment (ECF No. 98) is **GRANTED**. Plaintiff's Objection (ECF No. 42) to the Order and Recommendation is **OVERRULED**.

## VI.   PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff filed his Motion for Partial Summary Judgment (ECF No. 113) requesting the Court enter judgment in his favor on his claim of deliberate indifference against the Defendants. In support of his motion, Plaintiff attached a magazine article and documents regarding ICDC's involvement in actions filed by other parties asserting constitutional violations against ICDC. (ECF No. 113-1 to 113-3.) At the outset, this Court notes that unlike Plaintiff's medical records that pertain directly to Plaintiff and can be authenticated for trial purposes, Plaintiff's attachments are irrelevant to Plaintiff's situation and would be inadmissible at a trial of this matter. Plaintiff states he also relies on the Defendants' Declarations attached to the Defendants' MSJ and on the facts stated in Defendants' MSJ, to the extent the Declarations and facts support his motion.

Judge Langstaff states that Plaintiff's MSJ reiterates the allegations of the Amended Complaint in addition to summary conclusions that the facts alleged establish the violation of Plaintiff's constitutional rights. Judge Langstaff recommends this Court deny Plaintiff's MSJ on the bases that Plaintiff failed to satisfy his burden to establish that no genuine issues of material fact remain in this case.

Plaintiff objects to Judge Langstaff's denial of his partial motion for summary judgment alleging that it "is an exhibition in open bias." (ECF No. 142 at 3.) Plaintiff complains that Judge Langstaff spent nine pages analyzing the Defendants' MSJ but "finished off my motion without any analysis." *Id.* Plaintiff further complains that Judge Langstaff "is wrong that my

allegations are similar in my Complaint and in my motion. Even if they are, it cannot be a cause of denial of my motion." *Id.*

Judge Langstaff is correct in his analysis. Plaintiff attempts to support his allegations against the Defendants with wildly unsupported statements such as "the impression conveyed to ICE detainees at the detention centers, where ICE was considered the big Daddy and the Wardens and staff of detention centers shook in their pants at even the mere mention of the name of ICE," suggesting that Defendants were in a supervisory capacity and had control over medical/dental care. (ECF No. 113 at 7.) Plaintiff alleges that Defendants exercised a supervisory role and corrected medical negligence of ICDC medical staff for two detainees in two situations of which he is aware and that Plaintiff can produce the detainees as witnesses. Plaintiff's time to provide testimony of witnesses has passed. (*Id.* at 8.) Plaintiff alleges that he was transported from ICDC to Adams County Detention Center in Mississippi ("ACDC") where a dental surgeon replaced a filling and advised Plaintiff that the filling could have been smaller if filled earlier. (*Id.* at 10.) According to Plaintiff, this dental surgeon expressed concern for the possible degradation of his health due to the delay in resolving Plaintiff's dental problems. Plaintiff states he has the medical records of ACDC. (*Id.*) Again, Plaintiff's allegations and assertions that he will provide evidence and witnesses at trial as opposed to actually providing such evidence in support of his motion, falls far short of what is required for this case to proceed past the summary judgment stage.

Before Plaintiff's MSJ could be granted, Plaintiff had the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Plaintiff could have met that burden only by presenting *evidence* or pointing to specific evidence in the record showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.

Plaintiff provided only general references and conclusions that Defendants acted with deliberate indifference. Plaintiff has not provided ANY evidence—let alone admissible evidence—that although the Defendants were aware of his dental problems, that they were also aware that his dental problems were serious, and that knowing such, Defendants acted

with deliberate indifference. Without such evidence, Plaintiff has not established an essential element of his cause of action and is not entitled to summary judgment against the Defendants.

Upon full review and consideration of the record, the Court finds that Judge Langstaff's Order and Recommendation (ECF No. 140) should be, and hereby is, **ACCEPTED, ADOPTED**, and made the Order of this Court for the reasons stated, findings made, and conclusions reached therein, together with the reasons stated, findings made, and conclusions reached herein. Accordingly, the Plaintiff's Partial Motion for Summary Judgment (ECF No. 113) is **DENIED**. Plaintiff's Objection (ECF No. 42) to the Order and Recommendation is **OVERRULED**.

## VII.  CONCLUSION

The Court having granted Defendants' Motion for Summary Judgment (ECF No. 98) and having denied Plaintiff's Partial Motion for Summary Judgment (ECF No. 113) for the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Akash Dixit shall take nothing by his Amended Complaint (Doc. 23) and judgment shall be entered in the Defendants' favor.

**SO ORDERED**, this 28th day of March 2023.

　/s/W. Louis Sands　　　　　　　　　
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**